Filed 8/7/23  P. v. Daniel CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B318222 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA480875) |
| v. | |
| DANTE DANIEL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert C. Vanderet and Richard S. Kemalyan, Judges.  Affirmed.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Dante Daniel was convicted of one count of second degree robbery and one count of assault with a deadly weapon. The trial court imposed a prison sentence of 25 years to life under the "Three Strikes" law.

On appeal, Daniel argues the trial court erred in failing to instruct the jury sua sponte on theft as a lesser included offense of robbery. Daniel further contends the court erred in denying part of his *Pitchess*[1] motion for discovery of police officer personnel files, and he asks us to examine independently the personnel files that the court had reviewed in camera during the proceedings below.

First, we conclude that regardless of whether the trial court should have instructed the jury sua sponte on theft, any such error was harmless. The jury necessarily found that Daniel took the victim's property by force or fear, and thereby perpetrated a robbery and not merely a theft, when the jury found true an allegation that Daniel personally used a deadly and dangerous weapon to commit that offense.

Second, the trial court did not err in denying Daniel's *Pitchess* motion as to the personnel records of three police officers because he did not offer any evidence showing that the police report Daniel submitted with his motion relied upon any statements made by these three officers. Thus, the court did not abuse its discretion in deciding to review in camera only personnel records belonging to the officer who authored the police report.

---

[1] (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).)

Lastly, although our independent review of the personnel records examined by the trial court in camera substantiates the court's ruling that the documents do not contain discoverable information, the court should have asked the custodian of records to identify which documents from the police officer's personnel file had not been provided to the court and why the custodian had withheld them. Nevertheless, we conclude that this error is harmless because Daniel does not contest the Attorney General's assertion that Daniel's trial testimony was largely consistent with the testimony of the officer who wrote the police report.

We thus affirm the judgment.

## PROCEDURAL BACKGROUND[2]

On October 24, 2019, the People filed an information charging Daniel with one count of second degree robbery, in

---

[2] Our description of the trial court proceedings and of the evidence presented below is derived in part from admissions made by the parties in their appellate briefing, and from assertions made by the Attorney General to which Daniel does not respond in his reply. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 668, 674 [criminal case in which the Court of Appeal stated: " 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "]; *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 (*Reygoza*) [criminal case in which the Court of Appeal assumed that an assertion made by respondent was correct because the "defendant did not dispute respondent's claim in his reply"]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90

3

violation of Penal Code[3] section 211 (count 1); and one count of assault with a deadly weapon, in violation of section 245, subdivision (a)(1) (count 2). The information alleged that in the commission of count 1, Daniel "personally used a deadly and dangerous weapon(s), to wit, [a] KNIFE AND/OR SCISSORS, said use not being an element of the above offense, within the meaning of . . . [s]ection 12022(b)(1)."

Also on October 24, 2019, Daniel formally waived his right to counsel, elected to represent himself, and pleaded not guilty to both counts.

As we explain in greater detail in Discussion, part B.1, *post*, the trial court granted in part and denied in part Daniel's pretrial *Pitchess* motion and, upon conducting an in camera review of certain police officer personnel records, the court found that these documents did not contain any discoverable material.

A jury found Daniel guilty on both counts, and it also found true the allegation that Daniel personally used a deadly and dangerous weapon in the commission of the second degree robbery. Prior to the sentencing hearing and at Daniel's request, the trial court revoked Daniel's pro per status and appointed counsel to represent him. The trial court later sentenced Daniel for the robbery conviction to state prison for 25 years to life under the Three Strikes law. The court imposed a sentence of 25 years to life for the assault conviction as well, but the court ordered the

(*Rudick*) [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].) We summarize only those facts pertinent to our disposition of this appeal.

[3] Undesignated statutory citations are to the Penal Code.

4

sentence to run concurrent to the prison term imposed for the robbery conviction. Daniel timely appealed the judgment.

## FACTUAL BACKGROUND

We summarize only those portions of (a) evidence offered by the People and (b) Daniel's trial testimony that are relevant to this appeal.

### 1. *The People's evidence*

On September 1, 2019, C.V. stopped near the corner of Alvarado Street and Reservoir Street to speak with one of his friends. While C.V. was sitting at a table at that location, he observed that Daniel was arguing with an older man who went by the name "Pinky." C.V. told Daniel to leave Pinky alone. Daniel then walked toward C.V., told C.V. not to meddle, and attempted to strike C.V. with a closed fist. C.V. ducked, thereby successfully evading the punch, and then grabbed Daniel by the neck and pulled him to the ground.

Next, C.V. returned to his seat, and Daniel walked away to a table that was approximately 10 feet away from C.V. Moments later, C.V. realized that Daniel was attacking him. C.V. felt some wetness on the back of his head. C.V. looked at Daniel and saw what appeared to be two knives in Daniel's hand. C.V. realized that he had been stabbed multiple times.

C.V. grabbed a bicycle-locking chain that was on C.V.'s bicycle and swung it. Although the chain made contact with Daniel's body, Daniel was protected by a type of hard plastic gear that is worn by motorcyclists.

At that point, Daniel grabbed C.V.'s backpack, which contained C.V.'s wallet, identification, paperwork, and a shirt from C.V.'s place of employment. C.V. did not attempt to prevent

5

Daniel from taking the backpack because C.V. was afraid of being stabbed again. After Daniel left the area with the backpack, C.V. contacted the police.

Subsequently, Officer Gabriel Rivas arrived at the scene. C.V. spoke to Officer Rivas about the attack. A witness to the altercation told Officer Rivas that he knew the identity of the attacker and where the attacker was located. The witness directed the officer to a tent pitched under a bridge. After Officer Rivas asked whether anyone was inside the tent, Daniel exited the tent.

C.V. later arrived at the tent and identified Daniel as the man who attacked him. During a search of the tent, Officer Rivas discovered several items belonging to C.V., to wit, a backpack, a wallet, an identification card, and a shirt from C.V.'s place of employment. The tent also contained two pairs of scissors and certain motorcycle gear.

### 2.    *Daniel's testimony*

Daniel saw a backpack near some benches where people were sitting. Daniel believed the backpack had been abandoned and could be claimed by anyone. Daniel placed the backpack inside his own bag.

Daniel saw a man called Pinky sitting at a table with three bottles of beer. As Daniel walked over to Pinky, Daniel accidentally knocked over one of the beer bottles. Daniel tried to grab the beer bottle, but in doing so, he accidentally knocked over other beer bottles. At that point, Pinky began yelling.

A group of people then approached Daniel. One of the members of the group struck Daniel from behind, and C.V. grabbed Daniel by the neck. Daniel escaped from C.V.'s grip, went over to Daniel's bag, and grabbed a pair of scissors. After

6

Daniel obtained the scissors, a member of the group swung a chain at Daniel, and another member threw something at Daniel. Although Daniel did not intend to stab C.V. with the scissors, the scissors may have scratched C.V.'s head during the altercation.

The altercation eventually concluded, and Daniel thereafter withdrew to his tent. Daniel changed his clothes and began looking through the items that he had found. When a police officer later questioned him, Daniel falsely told the officer that he had been home all evening. Daniel also falsely told the officer that all of the property in the tent belonged to him. Daniel lied to the police officer because he did not want to " 'snitch' " on the people who had attacked him.

## DISCUSSION

### A. Any Error In Failing To Instruct the Jury Sua Sponte on Theft Was Harmless

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] . . ." . . . [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offenses were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)

"[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit

consideration' by the jury.  [Citations.]  'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]" ' that the lesser offense, but not the greater, was committed."  (*Breverman*, *supra*, 19 Cal.4th at p. 162.)  "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight."  (*Id.* at p. 177.)

" 'Theft is a lesser included offense of robbery . . . .' [Citation.]"  (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.) "Section 211 defines robbery as 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.'  Robbery is . . . ' " 'a species of aggravated larceny.' " '  [Citation.]  Theft by larceny may be committed without force or the threat of violence and may be completed without the victim ever being present.  [Citation.]  To elevate larceny to robbery, the taking must be accomplished by force or fear and the property must be taken from the victim or in his presence."  (*People v. Gomez* (2008) 43 Cal.4th 249, 254 (*Gomez*).)

"[R]obbery, like larceny, is a continuing offense.  All the elements must be satisfied before the crime is completed. . . . [¶] . . . [Theft by l]arceny requires the taking of another's property, with the intent to steal and carry it away.  [Citation.] 'Taking,' in turn, has two aspects:  (1) achieving possession of the property, known as 'caption,' and (2) carrying the property away, or 'asportation.'  [Citations.]  Although the slightest movement may constitute asportation [citation], the theft continues until the perpetrator has reached a place of temporary safety with the property [citation]."  (See *Gomez*, *supra*, 43 Cal.4th at pp. 254–255, fn. omitted.)

8

Daniel contends that his "conviction for robbery must be reversed because the trial court failed to instruct sua sponte on the lesser included offense of theft."[4]  (Boldface & capitalization omitted.)  Specifically, he argues, "[T]he court erred by not instructing on theft because the evidence could support a jury finding that [Daniel] did not use force or fear when he took [C.V.'s] property."[5]  As we explain below, we conclude that even if arguendo the trial court erred in failing to instruct on theft sua sponte, any such error was harmless.

As a preliminary matter, Daniel asserts, "Whether the trial court's error is analyzed under the harmless beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18, or the reasonable probability of a more favorable outcome standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, [Daniel] was prejudiced here."  The *Chapman* standard of prejudice governs

---

[4] Although there are forms of theft other than theft by larceny, e.g., theft by embezzlement and theft by false pretenses (see *Gomez*, *supra*, 43 Cal.4th at p. 255, fn. 4), Daniel does not claim the trial court should have instructed the jury on any type of theft other than theft by larceny.

[5] Daniel claims in his opening brief that although C.V. "testified that he let [Daniel] keep the bag because he was afraid and [Daniel] had a knife [citation], . . . [C.V.] did not testify about where the bag was located, whether [Daniel] took it from his person, or whether [Daniel] even knew that that bag belonged to [C.V.]"  Insofar as Daniel asserts there was substantial evidence that Daniel did not take C.V.'s property from his person or immediate presence with the intent to steal and carry it away, we decline to reach that issue because he fails to cogently raise it. (See *People v. Evans* (2011) 200 Cal.App.4th 735, 756, fn. 12 [declining to address an argument that a party failed to support adequately].)

"federal constitutional error[s]" whereas *Watson* applies to "state law error[s]." (See *In re Christopher L.* (2022) 12 Cal.5th 1063, 1083.) Daniel thus intimates that the federal standard of prejudice potentially could apply to his claim of instructional error, although his position appears somewhat equivocal.

Our Supreme Court has squarely held "the failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility." (*Breverman*, *supra*, 19 Cal.4th at p. 165; see *id.* at pp. 169, 172 ["[W]e affirm that the rule requiring sua sponte instructions on all lesser necessarily included offenses supported by the evidence derives exclusively from California law. . . . [¶] . . . [¶] [F]ederal law has no effect on the appropriate standard of California appellate review when, in a noncapital case, the defendant challenges his otherwise valid conviction of a charged offense on grounds the trial court failed *in its sua sponte duty* under California law to provide instructions, correct and complete, on all lesser included offenses . . . ."].) We are bound by *Breverman*'s holding on this point. (See *People v. Perez* (2020) 9 Cal.5th 1, 13 [" 'The decisions of this court are binding upon and must be followed by all the state courts of California.' "].)

Under the *Watson* standard, we must determine whether it is " 'reasonably probable' the defendant would have obtained a more favorable outcome had the [alleged] error not occurred." (See *Breverman*, *supra*, 19 Cal.4th at p. 178, quoting *Watson*, *supra*, 46 Cal.2d at p. 836.) "[T]he appellant bears the burden to make an 'affirmative showing' " of the existence of such a reasonable probability. (See *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532–533; see *ibid.* [noting that this

10

harmless error standard "applies in both criminal and civil cases"].) "Appellate review under *Watson* . . . . focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration." (*Breverman*, at p. 177.)

With these principles in mind, we assess whether the absence of an instruction on theft by larceny prejudiced Daniel. Of critical importance to our prejudice analysis is the jury's finding that "in the commission . . . of [the second degree robbery], . . . Daniel[ ] personally used a deadly and dangerous weapon, to wit:  scissors, said use not being an element of the offense, within the meaning of . . . section 12022(b)(1) . . . ."[6]  To render this finding, the jury must have concluded that, " ' "during the crime[,] . . . the defendant himself . . . intentionally displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death." ' [Citation.] . . . [Citation.]"  (See *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 629–630.)  Put differently, the jury must have found that during the commission of the robbery, Daniel attacked C.V. with the scissors or threatened to do so, meaning he engaged in such conduct to " 'achiev[e] possession of the property' " or at some other point prior to his " 'escape with the loot . . . .' "  (See *Gomez*, *supra*, 43 Cal.4th at pp. 255, 257.)  Because a "taking" is accomplished by force or fear for the purposes of robbery under

---

**6**  Although the verdict indicates the jury found Daniel personally used a deadly and dangerous weapon "in the commission *and attempted* commission" of the second degree robbery, the jury found that Daniel did in fact commit (and did not merely *attempt* to commit) the second degree robbery. (Italics added.)

11

these circumstances, the jury necessarily found this essential element of robbery in rendering its verdict vis-à-vis the section 12022, subdivision (b)(1) allegation.[7]

" 'It is well established that "[e]rror in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions." ' [Citations.]"[8] (*People v. Wang* (2020) 46 Cal.App.5th 1055, 1072.) Here, because the jury's finding that Daniel personally used a deadly and dangerous weapon in committing the robbery is inconsistent with Daniel's claim that the jury could have found he did not employ force or fear in taking C.V.'s property, we conclude there is no reasonable probability that Daniel would have obtained a more favorable outcome if the jury had been instructed on theft by larceny.

---

[7] (See *Gomez, supra,* 43 Cal.4th at p. 258 ["[I]f the 'force or fear' element comes into play not during caption but during asportation, the crime is still a robbery. . . . [R]obbery is a continuing offense. If the aggravating factors are in play at any time during the period from caption through asportation, the defendant has engaged in conduct that elevates the crime from simple larceny to robbery."].)

[8] Daniel does not claim the trial court failed to instruct the jury properly on the robbery charge or on the section 12022, subdivision (b)(1) allegation. Accordingly, we presume the trial court instructed the jury properly on those issues. (See *People v. Giordano* (2007) 42 Cal.4th 644, 666 ["On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' "].)

## B. The Trial Court Did Not Commit Reversible Error In Ruling on Daniel's *Pitchess* Motion

Before addressing the substance of Daniel's challenges to the trial court's rulings on his *Pitchess* motion, we recite certain general principles applicable to our analysis.

"In *Pitchess*[, our high court] held that a criminal defendant's fundamental right to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information entitled a defendant, who was asserting self-defense to a charge of battery on a police officer, to discovery of police personnel records." (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 52 (*City of San Jose*), citing *Pitchess*, *supra*, 11 Cal.3d at pp. 535–537.) "In 1978, the California Legislature codified the holding of *Pitchess* by enacting Penal Code sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045.[9] [Citations.] To initiate discovery, the defendant must file a motion supported by affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue. [Citation.] This two-part showing of good cause is a 'relatively low threshold for discovery.' [Citation.] [¶] If the trial court finds good cause for the discovery, it reviews the pertinent documents in chambers and discloses only that

---

**9** "Although the Legislature's 1978 enactment of this statutory scheme superseded the court's holding in *Pitchess* [citation], discovery motions and hearings conducted pursuant to Evidence Code sections 1043 through 1046 are still commonly referred to as *Pitchess* motions and hearings." (*Riske v. Superior Court* (2016) 6 Cal.App.5th 647, 657, fn. 5 (*Riske*).)

13

information falling within the statutorily defined standards of relevance." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).)

To satisfy the materiality prong of the good cause standard, a defendant must "establish not only a logical link between the defense proposed and the pending charge, but also . . . articulate how the discovery being sought would support . . . a defense or how it would impeach [an] officer's version of events." (See *Warrick*, *supra*, 35 Cal.4th at p. 1021.) To show the discovery requested supports a defense or impeaches an officer's account, "the defendant must present . . . a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (See *id.* at pp. 1025–1026.) For the purposes of this inquiry, "a plausible scenario of officer misconduct is one that might or could have occurred" and is "internally consistent and supports the defense proposed to the charges." (See *id.* at p. 1026.) "Th[e] factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in [a] police report." (See *id.* at pp. 1024–1025.) "The trial court does not determine whether a defendant's version of events, with or without corroborating collateral evidence, is persuasive—a task that in many cases would be tantamount to determining whether the defendant is probably innocent or probably guilty." (*Id.* at p. 1026.)

Insofar as the trial court's decision on a *Pitchess* motion "is based on an interpretation of the statutes governing such discovery, our review is de novo." (*Riske*, *supra*, 6 Cal.App.5th at p. 657.) Otherwise, that ruling is "reviewed for abuse of discretion." (See *ibid.*) "The discretion exercised by a court ' "is not a capricious or arbitrary discretion, but an impartial

14

discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." [Citation.] An exercise of discretion is subject to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' [Citation.]" (*People v. Perez* (2015) 233 Cal.App.4th 736, 742.)

### 1. *The trial court's rulings on Daniel's* Pitchess *motion*

Prior to trial, Daniel filed a motion, in pro per, under *Pitchess* for discovery of the personnel files of four police officers: (1) Officer Rivas; (2) Officer Martinez; (3) Officer Mejia; and (4) Officer Potts. Attached to Daniel's motion were his declaration and a police report written by Officer Rivas that documents his investigation of this case.

At the hearing on Daniel's *Pitchess* motion, the trial court found that Daniel had "set forth specific factual scenarios which he alleges establish a plausible factual foundation of officer misconduct in three separate areas: [¶] The first is 'the arrival of the officers at the tent.'[10] [¶] The second is the location of the purported victim's wallet and identification. [¶] And third is the area of essentially a general denial that the victim saw the defendant punch an elderly man." The court found that the first area "does not provide a plausible factual foundation for officer misconduct that arises to the level that there must be an in

---

**10** In his declaration, Daniel attested that although the police report claims that officers knocked on his tent, they did not knock but instead drew their weapons and ordered him to exit the tent.

15

camera hearing." According to the trial court, "The second [area identified by Daniel] does not deny the presence of the wallet in the tent nor the identification in the tent, just that the identification was not in the wallet but was hidden by Mr. Daniel . . . when the officers arrived." Regarding the third area, the court remarked, "[E]ven if [Daniel's allegations relating thereto] are true, it does not establish officer misconduct" because "[t]he officer would just be reporting what they were told by the victim."

The trial court thereafter stated: "[T]he only officer that wrote a report in this case was Officer Rivas. And the court believes out of an abundance of caution that the motion should be granted solely as to Officer Rivas who authored the report and solely for the category of false report writing, all within five years of the date of the incident."[11] Next, the court held an in camera hearing at which only the court, the court reporter, and a custodian of records for the Los Angeles Police Department were present. After the in camera hearing concluded, the trial court informed Daniel and counsel for the People that the court had "conducted the in camera review of the records [the court]

---

[11] After the October 16, 2020 hearing on Daniel's *Pitchess* motion, the Legislature amended Evidence Code section 1045, subdivision (b) to remove a provision barring discovery of "[i]nformation consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought." (Compare Stats. 2002, ch. 391, § 2 [indicating this text appeared in Evid. Code, § 1045, subd. (b)], with Stats. 2021, ch. 402, § 1 [removing this text from Evid. Code, § 1045, subd. (b)].) Daniel does not assert that this legislative amendment applies retroactively to his case.

16

indicated [it] would review" but "found no discoverable information to be turned over."

On appeal, Daniel maintains the trial court erred in denying his *Pitchess* motion as to Officers Martinez, Mejia, and Potts, and by restricting "the scope of the in camera review . . . to only instances of false report writing" instead of expanding the scope of review to "instances of untruthfulness generally." Further, Daniel "requests that this court conduct an independent review of the reporter's transcript of the *in camera* hearing and of the actual documents presented to the trial court to determine whether any documents were incorrectly withheld."

As explained below, we conclude the trial court did not abuse its discretion by (1) granting Daniel's *Pitchess* motion as to only Officer Rivas's personnel records concerning false report writing, and (2) denying his request (a) for discovery of the personnel files of the other three officers and (b) to broaden the scope of discovery to include allegations of untruthfulness generally. Further, the trial court did not err in finding that the records produced by the custodian at the in camera hearing were not discoverable. On the other hand, the appellate record lacks sufficient detail for us to determine (a) which records from Rivas's personnel file the custodian had declined to produce at the hearing, and (b) why the custodian did not submit those records for the trial court's review. Nevertheless, we conclude this error was harmless.

17

2. *The trial court did not abuse its discretion by denying Daniel's* Pitchess *motion for personnel records of officers other than Officer Rivas or by limiting discovery to instances of false report writing*

According to Daniel, he correctly stated in his declaration that "a 'substantial issue in the trial of this case will be the credibility' of the four named officers, who are 'witnesses for the prosecution on issues related to the encounter with [Daniel] and witnesses, including their demeanor, what was observed in [Daniel's] possession, and any statements made by [Daniel]."  He argues that "[t]hough it is true that the [police] report identifies Officer Rivas as the author, the report is written in such a way that it is unclear which officers took which of the actions specified in the report and which facts in the report came from which officers," and that, "[b]ecause [Daniel] could not tell from the police report which police officer did or said which things, [he] successfully established a logical nexus between all of them and his theory of the case."  Daniel seems to also contend that because the credibility of all four officers was supposedly at issue, the trial court should have widened "the scope of the in camera review . . . to instances of untruthfulness generally," rather than merely "instances of false report writing . . . ."

Daniel directs us to certain passages from the police report to support his assertion that this document does not identify clearly which officers took each of the actions described in that document.  He points out that the report states, "Officers conducted a parole compliance check inside of [Daniel's] tent."  Daniel cites a passage that provides, "We . . . located the Victim's green back pack, black wallet containing his Mexican consular ID card, a work shirt that read 'Glen Oaks Car Wash' and other

18

misc. paperwork containing his personal information." Further, Daniel directs us to a portion of the report that relates, "Officers had the Victim look inside the tent and identify what items were his. The Victim identified his green back pack, black wallet containing his Mexican consular ID card, a work shirt that read 'Glen Oaks Car Wash' and other misc. paperwork containing his personal information."

Daniel fails to establish the trial court abused its discretion in narrowing the scope of *Pitchess* discovery to instances of false report writing on the part of Officer Rivas. We acknowledge that Daniel did not have to "present a factual scenario that is reasonably likely to have occurred[,] . . . persuasive or even credible." (See *People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318 (*Thompson*).) Yet, Daniel cannot establish the requisite " ' "plausible factual foundation" ' for [his] defense" "based on a showing that is merely imaginable or conceivable and, therefore, not patently impossible." (See *id*. at pp. 1316, 1318.) Put differently, under the governing standard, "the word 'plausible' " is not "synonymous with 'possible[.]' " (See *id*. at p. 1318.) This limitation on discovery is consistent with the Legislature's intent in codifying the *Pitchess* procedure—(1) to "carefully balance . . . the peace officer's just claim to confidentiality[ ] and the criminal defendant's equally compelling interest in all information pertinent to the defense," and (2) "to protect [officer personnel] records against 'fishing expeditions' conducted by defense attorneys . . . ." (See *City of San Jose, supra*, 5 Cal.4th at pp. 51–54; see also *People v. Lofchie* (2014) 229 Cal.App.4th 240, 251 [" ' "We must select the construction [of a statute] that comports most closely with the apparent intent of the

Legislature, with a view to promoting rather than defeating the general purpose of the statute . . . ." ' "].)

*Thompson* is instructive here. In that case, the defendant was apprehended by police officers after he sold cocaine base to an undercover narcotics officer. (See *Thompson*, *supra*, 141 Cal.App.4th at p. 1315.) The defendant "moved for discovery of personnel records and other information covering 11 . . . [police] officers and detectives who were involved in the drug transaction." (See *ibid.*) "In addition to [the undercover narcotics officer to whom the defendant sold the cocaine base], the motion named six officers who saw the transaction, two detectives who monitored [the narcotics officer's] wire, the arresting officer who found two $5 bills in [the defendant's] possession, and an officer who identified the bills as [the undercover narcotics officer's] buy money." (See *id.* at pp. 1315–1316.) In support of the motion, defense counsel submitted a declaration denying that his client sold narcotics to the undercover officer and claiming that "[w]hen '[the] defendant was stopped by the police and once they realized he had a prior criminal history they fabricated the alleged events and used narcotics already in their possession and attributed these drugs to the defendant.' " (See *id.* at p. 1317.) Defense counsel further stated that "[t]he charges '[were] a fabrication manufactured by the officers to avoid any type of liability for their mishandling of the situation and to punish the defendant for being in the wrong area, at the wrong time and for having a prior criminal history. . . .' " (*Ibid.*)

The trial court denied the defendant's *Pitchess* motion, and the defendant was later convicted for the sale of cocaine base. (See *Thompson*, *supra*, 141 Cal.App.4th at pp. 1314, 1316.) On appeal, the reviewing court rejected the defendant's claim that

the trial court erroneously denied his *Pitchess* motion. (*Id.* at p. 1316.) The *Thompson* court concluded that the defendant's "factual showing . . . [was] not plausible by any rational standard," given he was "asserting that, because he was standing at a particular location, 11 police officers conspired to plant narcotics and recorded money in his possession, and to fabricate virtually all the events preceding and following his arrest." (See *id.* at pp. 1315, 1318.) Although the Court of Appeal recognized that this "scenario is [not] totally beyond the realm of possibility," it explained that courts are permitted to "apply common sense in determining what is plausible, and to make determinations based on a reasonable and realistic assessment of the facts and allegations." (See *id.* at pp. 1318–1319.)

The defendant in *Thompson* was alleging that all of the 11 police personnel subject to his *Pitchess* motion had fabricated some aspect of the People's account of the drug transaction. (See *Thompson, supra,* 141 Cal.App.4th at p. 1318.) Even though the parties did not dispute that all 11 officers and detectives "were involved in the drug transaction" (e.g., "two [of the] detectives . . . monitored [the undercover officer's] wire"), the mere "possibility" that all of them were lying fell short of satisfying the " '*Pitchess* materiality standard . . . .' [Citation.]" (See *Thompson,* at pp. 1315–1316, 1318–1319.)

Here, because Daniel's case for establishing the materiality of Martinez's, Mejia's, and Potts's personnel files is even weaker than that of the defendant in *Thompson,* a fortiori, the trial court did not abuse its discretion in denying Daniel's request for discovery of the personnel files belonging to these three officers. As we noted above, Daniel concedes the police report is "written in such a way that it is *unclear* which officers took which of the

21

actions specified in the report and which facts in the report came from which officers." (Italics added.) Put differently, Daniel does not know which, if any, of these three officers supposedly fabricated the information provided in the police report. Further, because Daniel's contention that the scope of discovery should not have been limited to "false report writing" seems to be premised on his assertion that the trial court ought to have granted the motion as to all four officers, we also reject his claim that "the scope of the in camera review" should have extended to "instances of untruthfulness generally."

Additionally, the record strongly suggests that Daniel could have discovered which officers had relayed each detail included in the report. For instance, Daniel intimates in his declaration that officers' body worn camera video captured their interview with C.V., and the police report shows that the officers' body worn cameras may have been switched on during their encounter with Daniel. Daniel does not claim he was unable to discover each officer's precise involvement in the events described in the report, for example, by obtaining footage from body worn cameras. Thus, Daniel presumably had an opportunity to procure evidence necessary to establish good cause for an in camera review of Martinez's, Mejia's, and Potts's personnel files. Because he failed to do so, the trial court did not abuse its discretion in denying part of Daniel's *Pitchess* motion.[12]

---

[12] Daniel further contends that the trial court's partial denial of his *Pitchess* motion "violated [his] Fifth, Sixth, and Fourteenth Amendment rights to a fair trial, to due process, to present a defense, and to confront and cross-examine his accusers." Insofar as Daniel intends to raise any claims independent of his contention the trial court abused its discretion in denying his *Pitchess* motion, he waives any such claims of

22

3. *Although the trial court erred in failing to ascertain which documents the custodian withheld and why the official had withheld them, that error was harmless*

We have examined independently the personnel records belonging to Officer Rivas that the trial court reviewed in camera. (See *People v. Samuels* (2005) 36 Cal.4th 96, 110 (*Samuels*) [indicating that an appellate court may examine independently the personnel records reviewed by the trial court].) We conclude the court did not abuse its discretion in finding that none of the documents produced by the custodian of records concerned alleged instances of false report writing occurring within five years of the incident in question.

That the trial court did not err in its review of the documents produced by the custodian, however, is not the end of our analysis. " 'Although the custodian of records was required to submit for review only those documents that were potentially responsive to the discovery request, our Supreme Court has directed that "[t]he custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion." [Citation.] . . . [¶] Accordingly, in cases . . . where the custodian of records does not produce the entire personnel file for

error by failing to support them with argument and citation to authority. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "].)

the court's review, he or she must establish on the record what documents or category of documents were included in the complete personnel file. In addition, if it is not readily apparent from the nature of the documents that they are nonresponsive or irrelevant to the discovery request, the custodian must explain his or her decision to withhold them. Absent this information, the court cannot adequately assess the completeness of the custodian's review of the personnel files, nor can it establish the legitimacy of the custodian's decision to withhold documents contained therein. . . .' [Citation.]" (*People v. Wycoff* (2008) 164 Cal.App.4th 410, 414–415.)

The record for the instant case indicates that the custodian did not submit the entirety of Officer Rivas's personnel file to the trial court. Further, the custodian did not identify which documents, or categories of documents, from the personnel file had been withheld from the court, nor did this official explain why he believed the omitted documents fell outside the scope of discovery permitted by the court.

Pursuant to an order from this court, the trial court later settled the record on appeal to include all the documents it had reviewed at the in camera hearing. Although the sealed transcript for that subsequent hearing shows the trial court once again examined the custodian in the course of settling the record, the custodian did not identify which documents from Officer Rivas's personnel file had been withheld.

Daniel argues that if we determine the trial court committed error in the course of conducting the in camera hearing, we should utilize "the remedy . . . set forth in *People v. Gaines* (2009) 46 Cal.4th 172." "That is, if materials were improperly withheld, [Daniel's] conviction should be conditionally

reversed and the matter should be remanded to the trial court to order disclosure[, citation; t]hen, the trial court on remand must allow [Daniel] an opportunity to demonstrate prejudice from the failure to disclose the relevant information[, citation; and], . . . if the trial court determines that there is a reasonable probability the original outcome would have been different had the information been disclosed, the trial court should order a new trial." (Citing *Gaines*, at p. 181.)

The Attorney General counters that "[Daniel] will be unable to establish a reasonable probability that he would have obtained a better outcome if he had access to . . . information" in Rivas's personnel file that should have been disclosed. The Attorney General maintains, "[T]he credibility of Officer Rivas had little significance because [Daniel] testified at trial in a manner that was consistent with that of Officer Rivas. Specifically, [Daniel] acknowledged that the officers found [him in] possession of [C.V.'s] property. Although [Daniel] claimed that he believed the property had been abandoned and that he was the victim of an attack by [C.V.'s] group, his testimony contradicted that of [C.V.] rather than Officer Rivas or any other officer . . . ."

In his reply brief, Daniel does not contest the Attorney General's assertion that Daniel cannot establish that any error prejudiced him because Officer Rivas's credibility had "little significance . . . ." Instead, Daniel reiterates his request that we examine the materials reviewed by the trial court, and points out that he took steps to ensure "the record [was] settled and augmented to include the *Pitchess* materials that were actually reviewed by the trial court."

We acknowledge the *Gaines* court approved of an appellate disposition that conditionally reversed a judgment and " 'allow[ed a defendant] an opportunity to demonstrate prejudice' " if the trial court "determine[d] on remand that relevant information exist[ed] and should [have been] disclosed." (See *Gaines*, *supra*, 46 Cal.4th at pp. 176, 178, 181.) Nevertheless, by failing to challenge the Attorney General's contention that any failure to disclose information in Officer Rivas's personnel file was harmless, Daniel tacitly concedes that point. (See *Reygoza*, *supra*, 230 Cal.App.3d at p. 519 & fn. 4; *Rudick*, *supra*, 41 Cal.App.5th at pp. 89–90.)

Under these circumstances, we conclude that " '[t]he futility and expense' " of conditionally reversing the judgment and remanding the matter for further proceedings " 'militates against' " that disposition. (See *People v. Ledbetter* (2014) 222 Cal.App.4th 896, 904; *ibid.* [noting that " '[t]he law neither does nor requires idle acts[,]' " and holding that "[t]he power to order remand 'for such further proceedings as may be just under the circumstances' " under section 1260 "permits us to not remand to secure the same goal, i.e., justice under the circumstances"]; *Gaines*, *supra*, 46 Cal.4th at p. 181 [" 'It is settled that an accused must demonstrate that prejudice resulted from a trial court's error in denying discovery.' "]; cf. *Samuels*, *supra*, 36 Cal.4th at pp. 109–110, 138 [affirming a judgment on the ground, inter alia, that "even if the trial court erred because defendant made a showing of good cause in support of [her *Pitchess*] request [citation], such error was harmless in light of the extensive [trial] evidence"].)

26

## DISPOSITION

The judgment is affirmed.
<u>NOT TO BE PUBLISHED.</u>


                                    BENDIX, Acting P. J.


We concur:



        CHANEY, J.



        WEINGART, J.